term, when the judges delivered their opinions, seriatim, as follows:—
Parker, J.
[After a brief statement of the declaration, the evidence on the trial as reported by the judge, and the two points reserved by him.] With respect to the last point reserved, viz. that the defendants were not responsible for any moneys taken up by Smith, unless he had pursued his authority strictly, and drawn bills of exchange upon them, according to the letter of his instructions, I am of opinion that it cannai avail the defendants. Smith was joint owner, as well as supercargo; he was intrusted with the management of the voyage for all of them, and had very broad instructions ; the money borrowed went to purchase a cargo for the benefit of all concerned; and it cannot be imagined that if it was found necessary to give a security other than that of bills of exchange, it was intended that he should return home with a short cargo, or that he should be alone responsible for the sum taken up. Nor would it in any shape have changed the liability of the owners, had Smith given a promissory note or any other simple contract in their name. For, by directing him to draw bills, they had virtually engaged to accept such bills as he should draw, and so would have been directly chargeable to the lender, and could not have availed themselves of *17 circumstances which might have discharged drawees in common cases, or justified them in refusing to accept. I have no doubt, therefore, that, had Smith signed any simple contract whatever, in behalf of the owners, to secure money necessary for the objects of his voyage, within the limits of the credit he was authorized to take, the owners would have been liable, notwithstanding it seemed to nave been their expectation that bills of exchange should have been drawn upon them therefor.
But the misfortune of this case is, that instead of a simple contract, Smith attempted to bind his partners * and [ * 24 ] employers by deed, without any authority so to do; and although this objection is merely technical, I have not been able, with much labor, and a strong inclination, to get over it. A desire to do justice ought not lead us astray from rules of law, which are always beneficial in their general effects* however they may sometimes prevent the attainment of equity in particular cases. Whenever instances occur, — and fortunately the instances are but rare,— where the known and undisputed rules thwart the apparent equity of a case, the misfortune is to be lamented, but not cured by the judge; for in attempting to do particular justice, he may unconsciously produce general mischief, by relaxing the respect for those principles, which were founded in public utility, and will generally produce it.
The instrument admitted in evidence was unquestionably the-deed, valid in law, of Smith, which differs this case from that of White vs. Cuyler, which was cited by the plaintiff’s counsel. In that case, Mrs. Cwyler being a feme covert, her deed was void, and though Low, who signed it as her surety, might have been bound by it, yet he was merely a surety, and a stranger to the simple contract; and so his deed did not discharge the simple contract, which existed by implication of law against General Cwyler. Indeed, it may clearly be inferred from the reasoning of Lord Kenyon in that case, that if the bond had been good against Mrs. Cwyler, or her husband, an action of assumpsit could not have been supported.
In the case at bar, although the bond is not the deed of the defendants, Smith having no authority to execute a deed for them, yet it is the deed of Smith, and if he had not become a bankrupt, the plaintiff’s remedy would have been perfect against him. Can it then be given in evidence to support this action of assumpsit against the defendants ? The principle of law seems to be clear, that a specialty cannot be given in evidence * to support [ * 25 ] an action upon a promise. The reason is, that the very evidence offered shows that the party has a higher remedy than he *18 has sought; it proves, also, that there was no promise, or, if there had been, that it is merged in the security of a more solemn nature.
But it is said by the counsel for the plaintiff, that the taking of the money by Smith, pursuant to his instructions, constituted a con tract on the part of the owners to pay, and that the bond afterwards given by Smith would not discharge this contract. Had Smith been a stranger to the contract, provided one existed before the giving of the bond, it is true that the execution of the bond by him would have been but collateral security, and would not have prejudiced the claim of the plaintiff on the simple contract. But the relation, which Smith bore to the vessel, cargo and owners, renders it impossible to seize this distinction, as I should gladly have done, to support this action.
Hooper’s case, in 2 Leon. 110., which is frequently cited, and which is undoubtedly sound law, forbids a decision in favor of the plaintiff upon this point. The defendant there was indebted to the plaintiff on simple contract, and it was agreed that one J. S. should become bound to the plaintiff for the debt, to be paid on a day certain, and he became bound accordingly, and the defendant gave a bond to save J. S. harmless. . The Court was clear the defendant could not wage his law, for the contract is not determined by this obligation of a stranger, which was made after the contract. But if J. S. had been bound upon the contract, it had been otherwise. And in Pudsey’s case referred to in the argument, it was decided that if a stranger to the contract, being present, promised to enter into a bond to the party for the payment of the money agreed upon by the contract, and afterwards became bound accordingly, the contract was determined, because the obligation was pursuant to the contract.
[ * 26 ] * Also where two were indebted on simple contract, -* and one of them entered into a recognizance to the creditor, it was held that the simple contract was discharged. [ Vin. Abr. title Extinguishment, B. 8.] Dyer is cited for this position ; but after a very careful examination of Dyer, I can find no such case as is referred to by Viner (a). Nevertheless, the principle seems to be a sound one, and is handed down by the different compilers, without any question of the authority upon which it rests.
It seems clear that though the bond of a stranger, made subsequent to the contract, and not in pursuance of it, will not discharge it, yet that the bond of a party or of one where two or more are indebted, will. Now, in this case, either the bond itself was the contract, or there was a simple contract by Smith and the other *19 owners jointly, and then Smith discharged it by giving his bond, which was accepted by the creditor. So that quacunque via data, it seems to me clear that no action can be maintained upon a simple contract against the owners.
I have very reluctantly come to this conclusion, having a strong opinion in favor of the plaintiff upon the merits of the case; and we have all been willing to delay judgment, while any hope remained that a different decision could be justified. But all such hope being extinguished, I am bound to give my opinion according to my sense of legal principles.
Sewall, J.
The law certainly implies a general and very extensive authority in a part-owner of a vessel and cargo, which he accompanies in a foreign voyage as consignee for the other part-owners, and, being also appointed to act in the place of the master, subjected to his orders. It is also true, that what is done within the general authority of an agent sustaining a particular charactér, say a consignee, factor, ship’s husband, or master in a foreign port, is obligatory upon his principals, * even where spe- [ * 27 ] cial restrictions have been agreed upon; unless it appear that these were communicated, or otherwise known to the party, claiming by the contract of the agent (12).
It might be very questionable, however, whether a borrowing of money, for the purpose of enlarging the funds and stock of .an adventure, was a case within the general authority of a part-owner, consignee, or factor, to enable him to charge the concerned in a personal contract; no necessity arising in the course of the voyage being proved. And if in the case at bar this difficulty may be supposed to be obviated by a subsequent assent in the defendant’s taking to the return cargo, presuming this to have been with sufficient notice of the means used in acquiring it; a fact presumable from the arrival with it, and the adjustment of their voyage; especially when this conclusion is not resisted on their part, or repelled, as it might be, by an offer to produce the original papers, accounts, and adjustment; yet as this is a conclusion, rather of fact than of law, which the jury, strictly speaking, have not decided upon, my examination of the case refers altogether to the express authority of Smith, derived from the letters which have been cited, and supposing them to have been communicated to the plaintiff, as an inducement to the credit afforded Smith for the use of the ship Pomona.
The argument relied on for the defendants against the extent of Smith’s authority seems to be, that in his orders he was expressly limited to the precise form of a bill of exchange, for any loan he *20 might obtain in India on the credit of the owners of the ship; in which form of contract, the defendants, standing as drawees, would have been liable only upon due notice and diligence in the holder of the bills, and would have been discharged, it is said, by [ * 28 ] the important change of circumstances * which has happened in this case, from the subsequent bankruptcy of Smith and Jackson, two of the concerned.
The Court are therefore called upon to determine, whether Smith was thus restricted, and what his authority was, under the appointment and orders of the other part-owners; and whether the instrument in question proves any contract pursuant to his authority, and rendering the defendants liable in the present action.
Some of the expressions in the orders to Smith apply, and are almost appropriate to, bills of exchange; such as “ drafts on us,” “ drawn at long sight,” “ bills shall be duly honored.” But other expressions, as, “ to pay after the safe arrival of the vessel,” “ payable after the safe arrival of the property taken on credit,” are incompatible with a contract by bill of exchange, a contract directly negotiable, which is never to be formed and made payable on a contingent event (13) ; and these last expressions are appropriate to, or at least strongly intimate, a contract by bottomry or respondentia, or some direct obligation of the parties, not negotiable, in which the contingency of the arrival of the vessel and adventure should be regarded, either by making the payment depend upon it, or by calculating it in settling the time and term of the credit. And, upon the whole, it seems probable, that the parties had no determinate views of the mode of credit to be resorted to, or any intention of restricting Smith respecting it; and it is only by this construction we can reconcile his orders, in the whole tenor of them, and the declaration that they do not limit or restrict him, with their further instructions, respecting the detail of his negotiations. It is also to be considered, that the question is now with a third party, induced by the letters of credit to Smith, as his orders have been and may properly be called, to make him a loan for the use of the ship, on account of the owners. Their orders allow Smith some lat- [ * 29 ] itude of discretion, and are in a degree * equivocal. It becomes therefore the duty of the Court to examine whether the supposed variation in the mode of taking the credit, if a particular mode was authorized, has been material, and injurious to the concerned; and this view of the subject has been very justly anticipated in the argument for the defendants, though mistakenly, in my opinion, in the conclusion endeavored to be enforced.
*21 A bill of exchange drawn by Smith, in consequence of his orders, upon himself and the other part-owners, would have been, as to the responsibility of the owners, a bill accepted (14), nor would the law suffer them to object a want of notice among themselves, or the neglect of their own agent, for the purpose of excusing or lessening their responsibility. The loan to the agent was to be obtained, if possible, on the personal and joint responsibility of the owners of the Pomona; and whether the contract of repayment were a bill of exchange, or an agreement, or obligation not negotiable, seems quite immaterial. If it had been a bill of exchange, the owners being liable jointly, as acceptors, no change of circumstances, or delay, or indulgence of the payee, appearing in the case at bar, could have availed to discharge the defendants; and if liable by their undertaking, expressed in any other form, or by implication of law as parties to the consideration from which the contract arises, the responsibility of the defendants is not more absolute or extensive, than it would have been as the drawees of a bill of exchange, drawn by Smith upon himself, and the other part-owners of the Pomona, supposing the mode of negotiation to have been more conformable to the letter of his instructions (15).
Is there then any contract, in which the defendants are liable, proved by the instrument in question ? and what species of contract was it ?
* Though under a seal, it has not been argued by the [ * 30 ] counsel for either party, that the writing given in evidence could operate as the deed of the defendants. If their liability de pends, as has been supposed, upon their express authority to Smith, this was not given by deed, and therefore his power to oblige them by a deed, executed in their names, would have been at least questionable. But this question does not arise in the case at bar, upon an instrument where the agent distinctly binds himself as supercargo, and which he executes with his own seal only. If the defendants are liable upon this evidence, it must be, because, in the same writing, the owners of the ship are explicitly named, and engaged as parties in the contract, which is for the repayment of a loan, recited to have been taken for the use of the ship. And it is remarkable that Smith, the agent, seemingly in reference to his instructions to draw on himself as well as the other part-owners, alter engaging himself as supercargo, obliges the owners eo nomine; and expresses his signature to be for the other part-owners, naming them and himself owners, &c. And it admits of no doubt, in my apprehension, that, as far as the intention of the parties can effect *22 it, the writing contains two distinct collateral contracts: that of Smith, the supercargo, which is under seal; and that of the owners of the ship, including Smith, which is not under seal. The authority of Smith, thus to engage the owners of the ship, I must consider as proved; and then the only question will be, upon my construction of the instrument, whether the attempt is in itself illegal, or impracticable in this form.
The general principle, that the law regards the intention of the parties, in construing contracts, and in the remedies by which they may be enforced, needs no illustration, or proof, from decided cases. The opinion I entertain, that the defendants are liable in this action, and upon the contract in the case at bar, I shall en-[*31] deavor *to support by the authority of some decisions, which appear to me very closely analogous. Such, in my opinion, are the decisions cited for the plaintiff, particularly that in the case of Innes vs. Dunlop, where an action of assumpsit upon a Scotch bond under seal, was maintained in England, in the name of the assignee, appointed by an endorsement upon the bond, the con tract being, by the law of Scotland, negotiable; and the decision in the case of Fenner vs. Meares, where the obligor, by his endorsement upon a respondentia bond, promised to pay to any assignee the principal and interest of the bond, agreeably to the tenor thereof ; and after the determination of the risk, an assignee recovered, in his owi: name, in an action of general indebitatus assumpsit, the amount which had become due, as money received to his use.
In these decisions, contracts under seal were enforced, according to their constructive operation, in favor of plaintiffs, not parties to the original bond, but becoming parties, by the further agreement of the obligors, expressed in the one case, by the endorsement of the obligor, and implied in the other case, from the lea loci where the contract was made, upon the endorsement of the obligee.
In the case at bar, the agreement of the defendants, and the other part-owners of the Pomona, is expressed in the authority given by them, to Smith, to borrow on their joint credit, and their promise to honor his drafts; thus"enabling him to appoint the party to whom they should become responsible, and to what amount. The appointment is made, and their responsibility is expressly declared and engaged, by the instrument in question ; and they suffer no prejudice by the form of contract, which their agent, exercising the discretion committed to him, has seen fit to adopt. Thus connect- [ * 32 ] ing the letters of credit, and the contract *by Smith, the former contain the formal promise of the defendants, and *23 the other part-owners of the Pomona, to which the latter gives the intended operation and effect in favor of the plaintiff.
The objections made for the defendants suggest this diversity between the cases cited and that under consideration. Those' contracts availed to assignees entitled under them, and possessing interest secured by other legal principles; and the decisions effected only an accommodation of the remedies to the circumstances of the particular cases, and the rights of the parties. Here a contract, under seal, is to be enforced against supposed parties, who, it is admitted, are not engaged by the deed as such, if they are by the loan or consideration recited in it. And the argument is, that every previous contract was determined or extinguished by the bond of Smith.
In this view of the subject, I rest my opinion in favor of an action of assumpsit, against the defendants in the case at bar, upon the reasoning and sound principles which governed Lord Kenyon, and the Court of King’s Bench, in the case of White vs. Cuyler; and in a question of technical law, their decision may be considered as an authority. There, in an action of assumpsit, for work and labor, with the usual money counts, the evidence received at the trial was an agreement under the hands and seals of a Mr. Low and Mrs. Cuyler, wife of the defendant, whereby, in consideration of the plaintiff’s accompanying Mrs. Cuyler to the West Indies, and serving her in the capacity of waiting-maid, Mrs. Cuyler agreed, among other things, to pay the expense of the plaintiff’s passage back to England, in the event of her leaving the West Indies in ill health. This happened ; and the demand in the action against Mr Cuyler was for the expense of the passage back; and it was maintained upon this evidence; it not appearing * that [ * 33 ] Mrs. Cuyler had any power of attorney from her husband, nor was the covenant in his name, and, therefore, the agreement was not his deed. But whether, being within the general authority of the wife, the husband was liable upon the contract proved by it, weis not even made a question, either at the trial, or upon the rule. And to the objection that it was Low’s deed, and therefore a determination of the simple contract, it was answered by the Court, that the contract of a guarantee or surety under seal, does not, by operation of law, extinguish the debt of the principal.
This decision is an authority, to show that an action of assumpsit is a proper remedy against those who are-liable; and by the other decisions, it was shown to be a proper remedy for those who are entitled, by any contract expressed in a deed or writing, under seal, not sufficiently executed as a deed in their names (16).
*24 Respecting-the other objection, it would be not only contrary to the evident intention of the parties, but to the plain expressions of the instrument in question, to consider the distinct responsibilities of the supercargo, and of the owners of the Pomona, otherwise than as collateral engagements; the one the guarantee of the csner, whichever of them is the principal. It is not because the owners of the ship were parties to the loan obtained for their use, and are answerable in an implied contract upon that consideration, but because their partner and agent has expressly bound the owners as such, as well as himself as supercargo, for the repayment of the sum borrowed ; and construing this agreement according to its legal operation, it is a promise to pay that sum, with the interest, according to the terms of the contract.
[*34] * Not is it unusual, in mercantile contracts, that one party becomes liable, in distinct and separate actions, upon the same contract, executed by him in several characters. Such is the case where a bill of exchange is made payable to, and endorsed by the drawer; or drawn upon and accepted by himself, 01 by one partner upon the whole concern, and accepted by them (17) ; and such would have been the present case, if Smith had made .the defendants answerable with the other part-owners in a formal bill of exchange, drawn by him upon all the owners of the ship. Smith would have been answerable as drawer, and, also, with the other part-owners, as acceptors.
In this action, the plaintiff demands the principal sum loaned, with the interest, and has averred the promise of the owners of the ship, accordingly; and it may be considered as an objection of some importance, to the application of the evidence from the instrument in question, that by the formal words of the bond, the owners are bound to the payment of the penal sum, and it may be argued that no other express promise is provable from this instrument.
To this it may be answered, and I think satisfactorily, that the sum demanded, with the interest, according to the condition annexed to the penal obligation, is the sum substantially due, and for which the owners of the ship are engaged, collaterally with the supercargo, by the instrument. Contracts often arise, constructively, of a different nature and form from the more obvious import of the instrument, in which the parties have expressed their intentions and agreements (18). Thus a grant, or lease, may be construed a permission to retain, or a discharge; a recital of a fact, to be a covenant of the truth of it; and in equity, bonds with conditions annexed, are to be enforced, as agreements of the parties, [ * 35 ] according * to the tenor of the condition, excepting where *25 the penalty is, from the nature of the case, to be understood and construed as liquidated damages. A promise to pay a penal sum, which promise is to be void, if a sum borrowed shall be paid at a day certain, with interest, is, by construction and operation of law, a premise to pay the sum borrowed, with interest, at the date agreed upon ; for it is only with that effect, that the contract can be enforced (19).
To this constructive operation of the contract, a count of indebitatus assumpsit, for money lent, would be more suitable, in my apprehension, than the count said to have been principally relied upon at the trial, which is rather a recital of the evidence than of the contract deducible from it. But it is unnecessary to examine further this point of form, as a majority of the Court decide against the action.
Sedgwick, J.
This case presents to our consideration the following questions:—
1. Was the authority given to Smith to create a debt on the joint credit of the owners obligatory, if exercised in any other manner than that pointed out by the instructions, the specific mode of drawing the bills of exchange, particularly expressed by the instructions ?
2. As the authority to Smith was in terms restricted to the purchase of goods upon credit; did that authorize him to borrow money, to be invested in the purchase of goods?
3. Supposing Smith could, by other contract than a bill of exchange, bind the owners, by virtue of their instructions, and supposing, also, that Smith, by the authority to purchase goods, could bind the owners to repay a loan of money, to be invested in goods, was the contract, entered into by Smith by specialty, one for which they are responsible ?
* 1. Was the authority given to Smith to create a debt [ *36 ] on the joint credit of the owners obligatory, if executed in any other manner than that pointed out by the instructions, the specific mode of drawing the bills of exchange, particularly expressed by the instructions ?
This is an" action upon a contract, and it is essential to a contract, on which an action can be supported, that it should have received the assent of the party to be charged with the breach of it; and no stipulation can be binding, without such assent. Such contract, it is true, may be made, either by the party himself, or such other as he shall authorize for that purpose; but when done by a substitute, to render it obligatory, it must be in form and substance, within the *26 terms by which the authority is delegated. For instance, to assimilate a supposed case to that under consideration, should A. authorize B. to purchase goods on his account, and to provide for the payment of them, by drawing bills on a particular fund, B. would not thereby be authorized to bind his principal by promissory notes : and it would be no answer to the objection to an action brought on such a note, to say that it must be indifferent to A., whether a bill was drawn, or a note given, because, in the latter case, the money appropriated to discharge the bill would be left free, to be applied to the payment of the note. To this it would be a sufficient reply, “ Non in hcec feeder a veni,” “ To this contract I have never assented.” I take the principle to be universally true, that all authorities, whether judicial, or ministerial, or private by one person to another, must be pursued; for where one has no right to do a thing, but by a derivative power, he must show that he has pursued his power (20). The principle which seems to me clearly to govern this question, cannot be expressed in language more intelligible and precise, [ * 37 ] than that which was used by Lord Mansfeld in the * case of Taylor vs. Horde & al. (21). Speaking of the execution of powers, he says, “ The intent of the parties, who gave the power, ought to govern every construction. He, to whom it is given, ought to enjoy the full exercise of it. Those over whose estate it is given, have a right to say, 'It shall not be exceeded; the conditions shall not be evaded; it shall be strictly pursued in form and substance.’ ” And all acts done under a special authority, not agreea ble thereto, nor warranted thereby, must be void. The same prin ciple is exemplified, illustrated, and enforced, in innumerable adjudged cases.
Now, then, if a delegated authority, to render its execution binding on the principal, must be strictly pursued, and that as well in form as in substance, the inquiry is, Was the power given to Smith so pursued in this case ? I will point out some particulars, in which it was not strictly pursued ; and some in which it was not pursued at all, either in form or substance.
1. He was authorized to take credit for goods. He was not authorized to obtain a loan of money. He did not take any goods upon credit, but he did obtain a loan of money. Is this strictly pursuing his power ? It seems to me that there is a difference in substance between the authority given by the owners and its execution by their substitute ; for I can easily conceive that a man might willingly intrust an agent with authority to purchase goods on his credit to a limited amount, who might not deem himself safe to intrust the same agent to borrow money to any extent on hi? credit, *27 and risk it afterwards, being invested in goods for his benefit. But whether, in substituting a loan of money for a purchase of goods, there was a departure, in substance, from the authority given to Smith, that there was one in form, cannot be denied by any one, who wiL not at the same time affirm that money and goods are the same. If, then, it be true, as asserted *by [ * 38 ] Lord Mansfield, that to render the execution of a delegated power binding upon those who gave it, it is necessary that it should be strictly pursued in form, the defendants may justly say, in answer to this action, We have never empowered Smith to borrow money on our credit.
2. The authority given to Smith was to be exercised in a particular manner, by drawing for the credit he should obtain, on account of the owners, himself included. He was to draw at as long sight as possible, and he was to give, if possible, a conditional draft, payable after the arrival of the ship in the United States; and the instructions afterwards seem to intend that he should in no case draw bills, which should oblige the owners to advance money on them, without allowing sufficient time for the arrival of the ship in the United States. That meaning I collect from these expressions: “ You observe, therefore, what credit you take in India, you have free liberty to draw on us for such sums, payable only after the safe arrival of the property ” [so taken on credit] “ in the United States. You will therefore take care to insure all the property you take there on credit.”
It‘is to be observed, that this authority to draw bills was virtually an acceptance of any bills drawn in conformity to it (22). In this case, then, the owners had specified a particular mode, in which they would be bound by the contract of the supercargo. Bills were to be drawn, and payable only after a time when the ship might arrive in the United States. Was this authority executed strictly ? was it executed in form or in substance, by the bond which was given by Smith ? If there be any meaning in the words, it seems to me that it was not.
* There might, I apprehend, be very good reasons, as [ *39 ] was stated in the argument at the bar, why the defendants should prefer being bound by bills to any other species of contract; why they would consent to be bound in that way, while they would not in any other. It might prevent delay in the adjustment of the concern; and in case of the bankruptcy of any of the owners, bills would afford greater security to the other owners, than any other *28 kind of contract. The latter argument is strongly enforced by the facts, which have taken place in this case. Two of the owners, as appears by the record before us, have become bankrupts; and if bills had been drawn, they might have been proved under their commissions, and the defendants have been indemnified, as far as the dividends would have gone; but of which, under the circumstances of this case, they could not avail themselves. There was not, then, a strict execution of the power given to Smith in any particular. It differed in form, provided a hill of exchange and a bond are not in form the same, and provided also an absolute and a conditional contract are not the same. And it differs in substance, inasmuch as it would, if the plaintiff should prevail, deprive the defendants of a benefit, to which they would have been entitled, if the contract bad been executed in the manner pointed out by the instructions.
The observations, which I have made, afford conclusive answers to the two first questions. It is proved to my judgment, 1. That the defendants did not authorize Smith to borrow money on their credit, and that they are not responsible for the loan which he obtained ; 2. That the defendants having confined the authority of the supercargo to one species of contract, he was restricted to that, and could bind them by no other; and 3. That there was a difference, fatal to the plaintiff’s claim, as to the time when, by Smith’s contradi, the money was to be paid.
- 3. Supposing Smith could, by other contracts than a bill of ex-F # , change, bind the owners by virtue of their instrucl [*40 ] tians; * and supposing also that Smith, by the authority to purchase goods, could bind the owners to repay a loan of money, to be invested in goods, was the contract entered into by Smith, by specialty, one for which they are responsible ? I think not. It is perfectly well known that no man can bind another by deed, unless he has been authorized by deed to do it. Therefore, a factor, unless so authorized, cannot by deed bind his principal, nor a partner his copartner; and if one man, however authorized, if not by specialty, make and execute a deed, expressed to be in behalf of his principal, the nrincipal is not bound by the deed, although he who made it is bound. Again ; if a bond, or other deed, be executed in consider > ation of an existing paroi contract, such contract is thereby merged and gone (23).
From these known principles, it follows, that the bond given by Smith was binding on him; it was his deed. It was not binding on the defendants; for it was not their deed. If it' was: .given,' which, under the circumstances we must presume, at the time of 'be loan, it was the only obligation for its repayment; but if there| *29 had been a precedent paroi contract for its repayment, by giving and accepting the bond, it was merged and gone. In every view, therefore, it seems to me, that the bond is all the remedy the plaintiff has for the repayment of the money lent.
The only promise set up in the declaration, on which it is pretended that the plaintiff can recover, and which alone was tried, as appears by the report of the judge who tried the cause, is contained in the last count, that which alleges the promise to have been made by Smith’s bond. If it be a bond by which Smith only is bound, it of course is not the promise of the defendants. In fact, technically speaking, it is not the promise of any one. It is true, that if the law in India, where the bond was made, made no distinction between specialty and paroi * contracts, this par- [ *41] ticular objection to the plaintiff’s right to recover would be answered; for the lex loci, in the construction of a contract, must prevail. But we have no evidence that there is a difference between the law of that country, and our own, in this respect; and, without evidence, we cannot presume any such difference to exist.
But it has been suggested that, as the defendants received the return cargo of the Pomona, justice requires that the plaintiff should be paid. To this, there are two answers, and each of them, to my mind, perfectly satisfactory. 1. There is not any evidence, that a cent in value, of the money borrowed, was appropriated to the purchase of the cargo; nor any evidence of the value of the cargo, by which it could have been presumed; and without such evidence, how can we assume the existence of the fact ? 2. Had there been ever so much evidence to establish the fact, that the money borrowed was invested in the cargo, as delivered to, and received by, the owners, the declaration contains no count, to meet the justice of the case. JSevj Trial granted.
Note. After
Sedgwick, J.
had delivered his opinion, he observed that he had received a letter from Thatcher, J., in which he expressed his decided opinion against the plaintiff’s recovery in this action, adding that he gave his opinion with reluctance, considering it a very hard case for the plaintiff. In this latter sentiment, Sedgwick, J., said he could not join with his brother, as no evidence appeared in the case, that the money received by Smith, of the plaintiff, was ever applied to the purchase of the goods, which ultimately came to the hands of the defendants.
The Chief Justice did not sit in the cause (a).

 Viner does not cite Dyer for this position, but refers to the case of Bassett vs Wood. Hilly 2 Car. C. B. cited in Fenner vs. the Bishop of London & al. Lit. Rep 17

 L. Raym. 175, 1484. — 2 Salk 442.-3 D. & E. 757.-4 D. & E. 77. — Chitty on Bills, 28 — 30

 Chitty, 32, 33.

 Chitty, 77. — Pillons & al. vs. Van Mierops al. vs. Hopkins & al. 3 Burr. 1663

 Chitty, 54. — Doug. 247.

 See 3 Esp. R. 42. Sutherland vs. Lishnan.

 Chitty, 48.

 Powell on Contracts, 236, 237.

 Cro. Jac. 137. 668 — Leon. 122, — Powell on Contracts, 313 — 2 Poth. opp. 61. 4*;. — 2 Burr. 826. — Mass. Stat. 1785. c. 22

 Vin. Abr. tit Authority. B. pl. 44.

 1 Burr. 60.

 Pillans & Rose vs. Van Mierops & Hopkins, 3 Burr. 1670. — Mason vs. Hunt, Doug. 284. Johnson vs. Collins, 1 East. 105. — Pierson vs. Dunlop, Cowp. 573. — Wilson vs. Clements, 3 Mass. Rev. 1.

 6 Co. 45. Higgins’s case. — Dyer. 21. b.

 Kimball vs. Tucker, 10 Mass. 192. — Williams vs. Hodgson, Hor. & Johns. 474. - Ward vs. Johnson, 13 Mass. 148. — Clement vs. Brush, 3 Johns. Cas. 180. — Tom vs Goodrich, 2 Johns. R. 2X3. — Vide Leslie vs. Wilson others, 6 Moore, 405. — Fletcher vs *30 Gillespie, 3 Bingh. 635. — Silson vs. Warwick Gas Light Co. 4 B. & C. 960. — Hall vs Smith, 1 B. & Cr. 407. — Burnell vs. Jones, 3 B. & A. 50. — Norton vs. Heron, R. & M. 229. — Ireson vs. Conington, 1 B. & Cr. 160. — Drake vs. Mitchell, 3 East, 251.