Whyte, Judge,
delivered the opinion of the court. The first question made by this agreed case is, whether one partner by his sealed instrument can bind the other partners.
This question has been settled in England, by the case of Harrison vs. Sykes & Rushforth, (7 Term Rep. 203.) In that case the defendants pleaded, that the agreement was not their deed; upon which plea issue was joined. The subscribing witness proved, that it was executed in his presence by Sykes, in the following form, “for Jackson self and Rushforth, W. Sykes,” but neither Jackson nor Rushforth were present at the execution, and the court of the Kings Bench were unanimously of opinion, that the deed thus executed was not binding on Jackson and Rushforth, who were partners with Sykes, although the matter of the deed appeared to be a partnership liability entered into for a full and valuable consideration received by them as partners.
In Pennsylvania, this is recognized as the law of that State. (Gerard vs. Basse and Sayer, 1 Dallas’ Rep. 119.) This decission was made thirteen years previous to the English decision, and is founded on common law principles. President Shippen, on delivering the opinion of the court, (which was unanimous,) says, that the virtual authority of one partner to bind the other by his act, does not authorize one to execute a deed for the other, and that *27 such authority does not result from their connection as partners. *
The same principle has been recognized in Massachusetts, as appears from the case of (Banorgue vs.-and others, 9 Mass. Rep. 11.) Parker, Judge, says, the misfortune of this case is, that instead of a simple contract, Smith attempted to bind his partners and employers by deed, without any authority to do so, and I have not been able, with much labor, and a strong inclination to get over it; and Sedgwick, J. says, it is perfectly well known, that no man can bind another by deed, unless he has been authorized by deed to do it; therefore a factor, unless so authorized, cannot by deed bind his principal, nor a partner his copartner, and if one man, however authorized, if not by specialty, make and execute a deed, expressed to be in behalf of his principal, the principal is not bound by the deed, although he who made it is bound. (Ibid 40.)
In the State of New York, the law is settled the same way, (3 John. Rep. 69,2 Caines’Rep. 254, 2 John. Rep. 213.) So in the State of Virginia, Shelton vs. Pollock (1 Hen. and Mun. Rep. 422, Garland vs. Davidson 3 Mun. Rep. 189.) The decisions in North Carolina concur with those already mentioned (2 Haywoods’ Rep. 99.) This having been the law of North Carolina, when the State of Tennessee formed a part of its territory, and the cession act of 1789, ch. 3, s 1, condition the 8th having stipulated, “that the laws in force and use in N. Carolina at the time of passing that act, shall be, and continue in full force in the territory ceded until the same be repealed or altered by the Legislative authority of the said territory; and no such repeal or alteration having been made in this respect, it remains the law of this State.”
From this short review of the decisions made in the principal mercantile States in the Union, the principle that one partner cannot bind another by deed seems to be fully recognized and settled, and why should not the same rule prevail here? Is there any thing in our local • situation, or in our territorial relations, with reference to *28 the other Slates, where the rule has been adopted, that requires a change of the rule with respect to us? Do our civil relations with regard to ourselves, or our positive in? stitutions demand the reverse of this rule? In any point of view is there any thing peculiar to us as a people, that separates us from the rest of the mercantile in this respect? We think not; — the argument has not satisfied us of the propriety of changing the rule had we the power to do it. The most that has been advanced, is, that cases of individual hardship may occur, (and the present may be admitted to be one of them) but the law from necessity must adhere to the general and established rules without regard to individual cases; and though the misfortune of the individul case is to be lamented by the judge, it is not his province to apply a remedy; by a change of the rule — this belongs to another and a differently constituted tribunal. It deserves, however, to be remarked, that were it in the power of the court to attempt what might be thought to be individual justice in the face of the general rule, great caution ought to be used, as a departure from a principle that has been acted on for years, might lead to a general mischief, not at the time foreseen, the consequences of which must be more injurious to society than the present real or supposed hardship.
But it is insisted on in the argument, that one partner has the right to bind by deed, by virtue of the North Carolina act of 1786 ch. 4. We have already seen that in North Carolina one partner cannot execute a bond to be obligatory on the other partner; it follows of course, that the act of 1786 has no such operation, as that contended for, or it would have been noticed by the court when this question was before it.
In Virginia, too, assignments of bonds, bills and promissory notes, and other writings obligatory for the payment of money or Tobacco, shall be valid, .and the assignee, may maintain an action in his own name, but shall allow all just discounts against himself and the assignor, before notice of the assignment given to the defendant, (see act 4th Dec. 1786, Virginia Code page 40, and the abridg *29 ment of the public permanent laws page 20; yet there, one partner cannot bind the other by deed.
The act of 1786 ch. 4, when looked into, will be found to have no operation upon the question before the court. The act makes all bills, bonds or notes for money, with or without seal, expressed to be payable to order, or for value received or not so expressed, negotiable, and transferable by indorsement; but it gives them in their negotiated state, no greater operation than they had before, nor does it attempt to give them any greater: it says “and all interest and property therein shall be transferrable by in-dorsement; that is, the interest and property which the party had is transferred and none other. Now what interest has the obligee in a note sealed by one partner only, but in the name of all the other partners? He has a right to demand and have, or to maintain a suit, if it should be necessary, for the sum therein expressed, against the party executing it, not against the partners who did not execute it. His assignee has the same right; the act makes his interest and property in the sealed note commensurate with that of the assignor, but no greater. The purpose of this act was purely to put sealed instruments for money on the same footing with promissory notes, and to give them the same properties which the act of 1762 ch. 9, gave to promissory notes; this last act gave to promissory notes in North Carolina what the statute 3 and 4 Ann. ch. 9, had given to them in England, i. e. the properties of inland bills of exchange. (4 Bacon Abr. 690.)
But it is said that the assignee will by this means be deceived; this is impossibles he has his case upon paper, and an inspection of the sealed note, gives him every information necessary to put him on his guard; he sees it is a partnership note under seal, he knows the law, or what is the same thing, he is bound to know it, that the partner who executed it is only liable, unless the other partners assented to it, or he was specially authorized by deed to seal the note; by an enquiry of the other partners, he may ascertain the fact. The inconvenience or danger to him is not near so great, as in many other cases of endorse *30 ments and assignments; the assignee of a sealed note given ior money won at play, or on a usurious contract, where the defect is hidden and does not appear on the face of the note, is in no better situation than the assign- or; for the gaming, or usurious consideration avoids the note, in his hands, although he is innocent and knew nothing of the consideration. (Douglass’ Rep. 736,1 Haw. P. C. page 530, s 20.)
The argument of the defendants counsel has placed the matter in a correct point of view; that is, to make the sealed note the deed of the defendants, the plaintiff must prove, either that it was executed by the defendants themselves, or by some person who was lawfully authorized to execute it for them: it was not executed by them, but by their partner Langley; it was not shewn he had authority to do so — and by the law merchant, no such authority is given to him, merely by virtue of the partnership; nor does the fact, that the articles of copartnership were under seal give him such authority merely from the circumstance of their being sealed; to have this effect a special power or authority, must be contained in the articles, see (7 Term Rep. 206,) and the articles of copart-nership in the present case contains no such power. The case agreed does not mention that Langley had any distinct power of attorney under seal from his copartners, and not being mentioned of course does not exist in the case. See (5 Mass. Rep. 24, 40. 7 Term Rep. 205.) Horsley vs. Rush & Tolson, Guildhall sittings after Michaelmas 1788.
The second question made by the case agreed is, in the event of the first being in favor of the defendants, can a recovery be had against them, on the counts in the declaration, which are founded on the original simple contract debt of the partnership, and which formed the consideration of the present sealed instrument; or is the simple contract debt of the firm extinguished by the writing obligatory given, as aforesaid, to secure the payment thereof?
This point forms the gravamen of the case on the part of the plaintiff, and though having very little doubt, we *31 were willing to take an advisari, to see if there was any possible way of getting over it; but on looking into the hooks within reach, the hope of finding any such way is extinguished, and we are with reluctance constrained to say, that the plaintiff cannot maintain an action on the simple contract, for by taking and accepting the sealed note, for the same simple contract it is merged and gone. This is the doctrine laid down in Higgins’ case (4 Coke Rep. 45,) and it has been followed ever since. It is there said “he who has a debt by simple contract, and takes a bond for the same debt or any part of it, the simple contract is determined.”
In Yiners Abt. title extinguishment B. 8, where two were indebted on simple contract, and one of them entered into a recognizance to the creditor, it was held the simple contract was discharged. This case is in point; I will only further observe, in addition to the authorities read on the argument, that it seems to be well settled, both by the English and American cases, that though the deed of a stronger guarantee or surety, made subsequent to a simple contract, and not in compliance with one of the terms of it, will not discharge or extinguish it; yet that the deed of the party to a simple contract or the deed of one where there are two or more will extinguish it. (6 Term Rep. 177. 5 Mass. Rep. 26.)