# CASES

## SUPREME JUDICIAL COURT

## CUMBERLAND.

### MAY TERM,

### 1822.

---

### HARPER & al. v. LITTLE.

Where one, residing in a foreign country, authorized an agent here to sell lands and give deeds in his name, such power became *de facto* extinct at the decease of the principal;—and a deed made in his name by the attorney, after the death of the principal, but before intelligence of it arrived here, was holden to be merely void ; and an action lies against the attorney to recover back the money paid.

Nor is the attorney estopped by such deed from claiming the land as heir, the deed being not his own, for want of apt words to bind him.

If one assume to act as attorney without authority and make a deed in another's name, which is void, the deed is not *therefore* the deed of the attorney, but the remedy against him is by a special action of the case.

THIS was a writ of entry upon the demandants' own seisin, and a disseisin by the tenant, and came before the Court upon a case stated by the parties as follows.

*William Jackson* late of *Balize* in the province of *Yucatan*, and father of all the demandants except *Harper*, who sued in right of his wife, being seised of the demanded premises, *March* 25, 1811, made a general letter of attorney under seal to *Harper*, authorizing him, among other things, to sell, transfer and convey any real estate of his constituent in *Portland*, and in his name to give deeds of the same.

*Jackson* afterwards died at *Balize, August* 18, 1813, during the war between the United States and Great Britain.

*Harper*, not having heard of the decease of *Jackson*, the intercourse with *Balize* being interrupted by the war, made a

deed *January* 8, 1814, in his capacity of attorney to *Jackson*, purporting to be a regular execution of .the power, and to convey the demanded premises to the tenant, for the consideration of fifteen hundred dollars, which was paid by the tenant, but never paid over by *Harper* to the executors of *Jackson's* will.

Upon these facts the questions presented to the Court were—1st. Whether the deed from *Harper* to the tenant was effectual to pass the estate?—2d. If not, whether *Harper* was estopped by the deed from claiming any part of the demanded premises? If these questions should be resolved against the tenant, it was agreed that the cause should stand for trial, the tenant claiming the land under a sale for non-payment of direct taxes assessed by the United States.

*Greenleaf*, for the demandants.

As to the *first* question;—the ancient and general rule of law is, that a power of attorney expires with the life of the constituent. *Lit. sec.* 66. *Co. Lit.* 52. *b.* 181. *b.* 1 *Bac. Abr. Authority, E.* And the only exception is where the power is coupled with an interest, or where the instrument conveying the power, conveys also to the attorney a present or future interest in the land. *Bergen v. Bennett*, 1 *Caines' Cas.* 3. But the present case not being within the exception, must be governed by the general rule.

As to the *estoppel;*—if one act *merely as the attorney* of another, he does not prejudice himself. 1 *Com. Dig. Attorney, C.* 6. Here the power was apparently sufficient, and the deed regularly made in pursuance of it, and within its terms, and *purporting* to be the deed of the *constituent;*—but he being dead, the deed is merely *void.* It is not like the case of an attorney assuming to act, but not using apt words to bind his constituent; for there, not being the deed of the principal, it might be the deed of the attorney.

Further, estoppels must be *reciprocal*, and bind both parties. 4 *Com. Dig. Estoppel, B. Brereton v. Evans, Cro. El.* 700. 1 *D. & E.* 86. But here the deed being merely void, the tenant has a right of action against *Harper*, to recover back the whole purchase-money, and one is now pending for that purpose. If,

therefore, *Harper* is estopped, he loses both the land and the money.

*Todd* and *Longfellow*, for the tenant.

When an agent is once vested with competent authority to act for his principal, all such acts must be binding on the principal and his heirs, until notice of a revocation actually given to the agent. Unless the law, from an honest policy, does thus support agencies, there can be no faith in them. The inconveniencies to the commercial world would be extreme ; and this too, in cases where they are most necessary. But the law is not open to this reproach. When a power is revoked by the death of the constituent who resided in a foreign country, the law will support all *bona fide* acts of the agent, until notice of such revocation by the act of God, as in cases of revocation by act of the party, or operation of law. *Co. Lit.* 55 *b.* 2 *Bl. Com.* 122. *Salt v. Field.* 5 *D. & E.* 215. *Chitty on bills* 27.

But all the heirs of the constituent ought to be estopped by the power authorizing the deed, where the death of the constituent intervenes between the execution of the power and the making of the deed, in the same manner and for the same reason that the principal would have been estopped if living. And this seems to be within the text law of estoppels. *Co. Lit.* 352. *a. Butler's note,* 342. *b.* They are also rebutted, either by the implied warranty arising from the act of their father in giving the power, or by an express warranty arising from the words in the power—" ratifying and confirming," &c. *Co. Lit.* 365. *b.*

The power and the deed may, for the purposes of justice, be considered as one conveyance, transferring the land from *Jackson* to *Harper* for the purpose of being conveyed to the tenant; and the deed from *Harper* may be considered as delivered by *Jackson* at the time he delivered the power. For the law will adopt and maintain a fiction to support justice, though not to overthrow it. *Co. Lit.* 342. *b. Butler's note,* 298. *Sullivan v. Montague, Doug.* 112.

Here also the tenant was induced by the act of *Jackson* to part with a full consideration for the premises demanded. The power, *quoad hoc,* is as irrevocable by the heirs of *Jackson,* as

his act in making the power would have been;—and the law will do the same justice by estopping the heirs, as the Chancellor would do by compelling releases, the rule both at law and in equity being the same. *Rex v. Bulkeley, Doug.* 293. *Jackson v. Veeder,* 11 *Johns.* 169.

But whether the *heirs* are estopped, or not, another principle applies to *Harper;*—for if the deed he assumed to execute is not the deed of his principal, the law treats it as his own, against which he can neither claim nor aver. *Banorgee v. Hovey,* 5 *Mass.* 11. *Hatch v. Smith, ib.* 52. *Sumner v. Williams,* 8 *Mass.* 199.

*Greenleaf,* in reply.

There is a difference between a revocation by the death of the constituent and by his own act while living. In the former case the land descends immediately to his heirs;—in the latter, not. Moreover, the case of this tenant is not different from that of every other party contracting; since the uncertainty of human life is the paramount law of every human contract.

The agent acting at a distance from his constituent, by virtue of a written power, has no greater authority than if, being present, he was requested to guide the hand of the principal in the act of signing the deed. In both cases it is the deed of the *principal,* if *he be living;*—otherwise not. In both cases he would have intended to convey, but died *re infectâ.*

Nor ought the heirs to be estopped. Admitting that they are bound whenever their ancestor is bound;—yet here they aver nothing against his deed, but a fact independent of it. They do not deny that he made the power,—but they affirm that he died before any act was done under it.

The cause, after this argument, which was had at *November* term last, being continued for advisement, the opinion of the Court was now delivered by

MELLEN C. J. The principal question, if not the only one, in this cause, is whether the deed made by *Harper* under the power of attorney from *Jackson,* operated to pass the estate to the tenant according to the intention of all concerned: or, in other words, whether the *death* of *Jackson* before the execution

of the deed though unknown to *Harper* and *Little* at *that* time, was such a determination of the power of attorney as to render the deed void and ineffectual as a conveyance of the estate.

It is admitted that a revocation of a power not coupled with an interest, will not defeat and render void those acts which are done in pursuance of it, and prior to notice of such revocation being given to the attorney.—Authorities are clear and direct on this point. The tenant contends that the same principle is applicable and ought to prevail in case of the determination of a power of attorney by the death of the constituent; such death not being known at the time of the execution of the conveyance made pursuant to such power;—though he frankly admits that no case can be found which establishes that principle.—This very circumstance goes far towards shewing the legal distinction existing between the two cases.—In the case of a *revocation*, the power continues good *against the constituent*, till notice is given to the attorney; but the instant the constituent dies, the estate belongs to his heirs, or devisees, or creditors; and their rights cannot be divested or impaired by any act performed by the attorney *after the death has happened; the* attorney *then* being a stranger to them and having no control over their property. In *Watson v. King*, 4 *Campb.* 272. it was decided by lord *Ellenborough* that a power of attorney, though coupled with an interest, is instantly revoked by the death of the grantor: and an act afterwards *bona fide* done under it by the grantee before notice of the death of the grantor is a nullity.

The counsel for the tenant has contended that the *power* and the *deed* made in pursuance of it, constitute but *one act*. Still, this *one act* was not completed till months after *Jackson's* death, and is equally ineffectual on this hypothesis. The deed is therefore ineffectual to pass the estate.

But it is further urged that as *Harper*, the attorney, who made the deed in that capacity, is a demandant in this action in right of his wife, who is one of the children and heirs at law of *Jackson*, he is estopped by the deed he has made to deny his own authority at the time of making it, and thereby destroy the effect of the conveyance; and that so the deed is good by estoppel against *Harper*, one of the demandants, and bars this action.

This argument deserves examination. It may be observed as a correct principle of law, that *Harper* is not *estopped* by this deed, unless it be *his deed* ; and, of course, unless *he* is bound by it.—In order, therefore, to shew that *Harper* is estopped by the deed made by him *as attorney* to *Jackson*, it must be established as law that it *is* his deed.—It has been stated by the counsel for the tenant as a settled principle of law, that if A. make a bond, for instance, as the attorney of B., when, in fact, he is *not* his attorney, it shall be considered the bond of A. and bind *him*.—Some cases have been cited in support of the position.—We apprehend this proposition is to be considered as subject to several limitations; and that it is not correct in the latitude in which it is advanced.—Before investigating this point, it is proper to remark that the deed in question is made in the most correct and proper form.—From beginning to end it is in the name of *Jackson* the principal.—He speaks in the *first person* throughout.—*He* grants—*he* covenants—and *his* name is subscribed and *his* seal affixed to the deed. All this is done by *Harper* as the attorney of *Jackson*.—In what part of the deed does *Harper* undertake to grant or covenant for himself? Can the Court grant or covenant for him? Or subject him to the consequences of having so granted or covenanted, when an inspection of the deed at once negatives these questions?—No man can aver against a deed or explain or contradict it.—And can a Court, in construing a deed proceed on a different principle ?

To establish the doctrine contended for, the counsel for the tenant has cited the case of *Banorgee v. Hovey & al. 5 Mass.* 11. —In that case *Smith* was part-owner of a vessel with the defendants and was also supercargo.—He borrowed money of the plaintiff and gave a *bond* to secure the payment, and signed and sealed it for himself and the other owners, naming them.— And by the bond he undertook to *bind himself* and *them* for the payment.—The Court decided that *Smith* had no authority to give the bond ; it did not bind the *other* part-owners, but it bound *him*.—And why should it not ?—He made the bond *in his own name* and actually *bound himself.*—So *far* the bond was valid, but no farther. In the case of *Hatch v. Smith and trustee, 5 Mass.* 42. it does not appear how the release was execut-

ed, whether in the name of the principals, or in his own name.—Besides, no definite opinion is given. *Sedgwick J.* says, " if the " attorney was not duly authorized, it must be *his* deed : and if " not directly a release to *Smith*, it must be construed as a cove-" nant for his security.—But we are all of opinion, that as this " case is before us, we ought *to presume* that when one undertakes " to act as attorney and did so act, *he was duly authorised*."—The principle of law is much more clearly stated by *Parsons C. J.* in the case of *Tippets v. Walker & al.* 4 *Mass.* 595.—That was an action of covenant broken founded on an agreement entered into by the defendants as a committee of the Directors of the Middlesex turnpike corporation. In witness of the contract and its terms the *defendants set their hands and seals.*—The *Chief Justice* says, " the decision of this cause must therefore " depend on the construction of the deed.—If the defendants " have *by their deed personally undertaken to pay*, they must be " holden.—In the agreement, the defendants have not (if they " had legal authority) put the seals of the directors or the seal " of the corporation, but have put *their own seals*; it is therefore " *their deed.*—And if it is not *their* covenant, *it is not the* cove-" nant of any person or corporation."—Again he says, " The " corporation are therefore not bound by this contract. The " contract before us is a contract of *some* individuals for *others* : " if they have bound themselves they must look to their prin-" cipals for indemnity—but they have *expressly bound them-* " *selves.*"

In the case of *Long v. Colburn*, 11 *Mass.* 97. the defendant signed the note declared on in the following manner, viz. " *Pro Wm. Gill, J. Colburn*"—And the Court decided, that unless *Colburn* had authority from *Gill* to make the note, *Gill* could not be bound by it : and if he had *no* such authority, still it would not bind *Colburn ;* because *he* did not promise ; and that the only remedy against *Colburn* was by a special action on the case for the deception and injury. In the case of *Ballou v. Talbot*, 16 *Mass.* 461. the defendant signed his name to the note declared on, adding thereto the words " agent for *David Perry.*"—The *Chief Justice* in giving the opinion of the Court says, " It is obvious " from the signature that it was neither given or received as the " defendant's note," and the Court observed that the remedy

against *Talbot* must be a special action on the case for the injury occasioned by his assuming the character of attorney. *Justice* as well as *strict law* seem to require that such should be the decision with respect to the deed under consideration. Suppose that in this case *Harper* had paid the price of the land, which he had received of *Little*, over to *Jackson*, by remitting it to him before knowledge of his death, and his legal representatives had received it;—or suppose he had accepted *Jackson's* draft for the amount:—and suppose that *Harper's* wife were the only child and sole heiress of *Jackson* : now, would it not, in such case, be unjust that the deed in question, executed with good faith and in full confidence that the authority which had been given was not determined, should operate as an estoppel against *Harper*—deprive him of all *his* interest in the land— and leave him liable to pay the draft according to his acceptance, or recover back the money, if paid, from the representatives in the best manner he could ?—In the present case, the deed being void, an action lies for *Little* against *Harper* to recover the same back again,—The law is *just* in giving a *remedy* where there is a *right.*—It gives an action against a debtor or a wrong doer and subjects him to a judgment for competent damages : though it never insures his solvency or the eventual payment of the damages.—Our decision may operate severely on the tenant, and he may unfortunately lose all he has paid for the estate as well as the estate itself : if so, we can only *lament* his misfortune, but cannot change legal principles in order to *avert* it.

In the case of *Stinchfield v. Little,* 1 *Greenl.* 231. there was a full and regular power delegated to *Little,* to make the deed; but he made it in *his own name :* and not in the name of the *Pejepscot proprietors.*—It was therefore not *their* deed; but *his own.*—In the present case, the deed made by *Harper* is good in *point of form,* but void for want of *power* in him to make it : and as in no part of the deed he has *bound himself,* the remedy against him must be by another form of action.

Upon the facts stated in the agreement of the parties, we are of opinion that the action is in law maintainable :—but as it is suggested that the tenant has another defence on which he relies, grounded on a sale of the demanded premises under the

law of the United States by one of their collectors of direct taxes, the cause must stand for trial that the merits of that defence may be investigated.