## JAMES TRIPP *versus* The SWANZEY PAPER COMPANY.

Where the agent of a manufacturing corporation was authorized, by a vote of the directors, to raise money for his own use, upon the credit of the company, and to give therefor a " company note," it was *held*, that the directors had not exceeded their authority derived from the general statutes regulating manufacturing corporations.

*Held* also, that the terms " company note " were not used in the vote to designate a technical promissory note, and that a bill of exchange drawn by the agent in the name of the company, upon the dishonor of which they could not be liable for any damages, was a company note, within the meaning of the vote.

ASSUMPSIT on a bill of exchange. Plea, *non assumpsit.*

The facts were, that by *St.* 1828, *c.* 6, Joseph Hooper and others were incorporated for the purpose of manufacturing paper, by the name of the Swanzey Paper Company, with tne powers, duties and privileges contained in *St.* 1808, *c.* 65,

defining the general powers and duties of manufacturing corporations, and the several statutes in addition. On December 24, 1828, the corporation was organized, and Hooper was chosen as their agent. On December 26th the directors held a meeting, and voted that Hooper "be allowed to hire money to the amount of 500 dollars for his own use, to be charged to him when it shall be hired on the company account, and for which he is authorized to give a company note." On February 9, 1829, Hooper drew the bill of exchange declared on, which was as follows :—"New-Bedford, February 9, 1829. Six months after date pay to the order of James Tripp 2d $225 for value received, and charge the same to the Swanzey Paper Company. Yours respectfully, Joseph Hooper, Agent. To Nash & Hayward, Boston." The company had no funds in the hands of Nash & Hayward when the bill was drawn, nor when it became payable. A demand was duly made on the drawees, and notice of non-payment duly given to the defendants as drawers. The consideration of the bill was, in part, the payment by the plaintiff of a note for $200, given by Hooper on his own account to the New-Bedford Commercial bank and indorsed by the plaintiff, and, in part, the payment of cash by the plaintiff to Hooper.

The defendants were defaulted ; but if the Court should be of opinion, that on the facts stated the plaintiff was not entitled to recover, a new trial was to be ordered.

*Oct. 26th.*      W. *Baylies* and *Eddy*, for the defendants, argued that the power to draw bills on account of the company was not incidental to the office of Hooper as agent, and at least the exercise of it must be restricted to the business of the company ; *Odiorne* v. *Maxcy*, 13 Mass. R. 178 ; that a bill of exchange is not a "company note" and so the agent had not pursued the authority given by the vote of the directors ; *Banorgee* v. *Hovey*, 5 Mass. R. 11 ; Paley on Pr. and Agent, 150 ; 1 Evans's Poth. on Oblig. 46, and note ; *Clement's Executors* v. *Dickey*, 1 Paine, 377 ; *Wilson* v. *Troup*, 2 Cowen, 195 ; *Batty* v. *Carswell*, 2 Johns. R. 48 ; *Snow* v. *Perry*, 9 Pick. 542 ; *Salem Bank* v. *Gloucester Bank*, 17 Mass. R. 1 ; and that the directors exceeded their power in passing that vote ; *Wyman* v. *Hallowell and Aug. Bank*, 14 Mass. R. 58.

*L. Williams* and *Warren* for the plaintiff.

*Per Curiam.* The giving of the company's security for the private debt of the agent, was not fraudulent, it being done by the authority of the directors, and the question then is, whether the directors were warranted in giving such authority. To determine this it is necessary to look into the nature of this corporation. It was created for the purpose of manufacturing paper, and is in effect a trading corporation ; it has power to buy and sell, and to do other acts incident to a trading company ; it has occasion to give and take extensive credits ; and under the *St.* 1808, *c.* 65, the directors have a general authority to manage its concerns. There can be no doubt, therefore, that the directors had authority to make an advance or payment of wages to the agent, and that for these purposes they might empower him to use the company's credit.

The only question of any difficulty arises on the point made by the defendants, that the vote of the directors conferred a limited authority to give a promissory note, and that this authority was not strictly pursued.

If the term *note* had been used technically to designate a promissory note, we have no doubt that the company would not be bound, because the law is very clear, that the party giving the authority may limit it precisely, and even arbitrarily, and it is not enough to say that the security given is not more onerous than the one authorized. But we think the term was not employed in that strict sense, and that a due bill, a memorandum check or other similar security, would fairly fall under the denomination of "note." *Banorgee* 'v. *Hovey*, 5 Mass. R. 23. The question then is, whether this bill of exchange comes within the term note, as above explained ; and we think that it does. There being no funds in the hands of the drawees, and this being known to the agent, the effect of the bill was to charge the company only, and this precisely in the same manner as a memorandum check, a due bill or a promissory note would have done. It was suggested that the company would be chargeable with damages on the dishonor of the bill, and if it were so, the bill would not bind them ; but this objection is without foundation, for the statute (1819, *c.* 41, § 2,) makes no provision for damages upon a bill of exchange drawn within

25 *

the commonwealth and payable at a place within the same, dis·
tant less than seventy-five miles from the place where it is
drawn.

*Judgment on the default.*