## SAELTZER, ADMR. v. GINTHER, REED, AND SMITH.

### April 22, 1837.

### *Case stated.*

1. A replevin bond taken in replevin of a distress for rent, in which there is more than one surety, is not void under the 11th section of the act of 21st March, 1772.

[Saeltzer v. Ginther, Reed, and Smith.]

2. *It seems* that even if the sheriff vexatiously and oppressively insisted on and obtained more than one surety, a bond would not therefore be void. The sheriff would be responsible however to the plaintiff in replevin, for so doing.

3. The bond is good at common law.

4. The statute is merely directory as to the bond, and long established practice has warranted the construction given.

THE following case was stated for the opinion of the court to be considered in the nature of a special verdict, &c.

" The above action of debt is founded upon a replevin bond, taken in an action of replevin founded upon a distress for rent, signed by the defendants above named, a true copy of which is hereto annexed and made part of this case stated.

" It is agreed that the condition of the said bond has not been complied with, and is therefore forfeited, and has been regularly assigned to the plaintiff above named.

" It will be seen, by reference to the said bond, that the sheriff has taken *two* sureties therein.

" Question. Is the bond void because the sheriff has taken two sureties as aforesaid? If yea, then judgment for the defendants. If not, then judgment for the plaintiff for one hundred and ninety-one dollars and sixty-two cents, with interest thereon from the 23d of September, Anno Domini, 1835."

The bond was in the usual form, in which the obligors were, Ginther the plaintiff in the replevin, and Reed and Smith as sureties.

*Dallas,* for defendant.

The 11th sect. of the act of 21st March, 1772, prescribes " that the sheriff, &c. may and shall in every replevin of a distress for rent, &c. take from the plaintiff, and *one* responsible person as surety, a bond, &c." (*Stroud's Purd. tit. Rent and Replevin.*) The following authorities relate to the subject. *Gilpin's Rep.* 155 ; *Wharton's Dig. App.* 623 ; 4 *W. C. C. Rep.* 620, U. S. *v.* Howell ; 13 *S. & R.* 193 ; 14 *S. & R.* 25 ; 5 *Pick.* 226 ; 3 *Call.* 523 ; 4 *M. & S.* 66 ; 20 *Johns.* 74 ; 1 *Gall.* 87 ; 11 *Coke* 27, Piggot's case ; *Bull N. P.* 171 ; *Hob.* 13 ; 2 *Hall's L. J.* 456 ; 5 *Mass.* 314 ; 8 *Mass.* 153 ; 1 *Peter's C. C. Rep.* 46 ; *Plow.* 66, 111, 113 ; *Cowp.* 29 ; 6 *Wheat.* 119.

*J. H. Campbell,* for plaintiff.

The bond is good, either under the statute, or as a voluntary bond. The act is merely directory. 12 *S. & R.* 307-14 ; 4 *Watts* 21 ; 2 *Saund.* 60—63 ; 1 *Mod. Rep.* 35.

[Saeltzer v. Ginther, Reed, and Smith.]

The opinion of the court was delivered by

PETTIT, *President.*—The eleventh section of the act of assembly of the 21st March, 1772, (*Stroud's Purdon* 926,) contains the following clause: " To prevent vexatious replevins of distresses taken for rent, *Be it enacted,* that all sheriff's and other officers, having authority to serve replevins, may and shall in every replevin of a distress for rent take, in their own names, from the plaintiff and *one responsible person as surety,* a bond," &c. It is to be remarked that there are no negative words in the section, to make void any bond not taken according to its strict letter, nor is there any thing to be found in the act, from which it can be *implied* that the legislature intended to recognise such a prohibition. The object of the law,—the prevention of vexatious replevins, can be accomplished just as certainly by the sheriff's taking more than one person in addition to the principal in the bond, as by his taking only one person as surety, while the interests of the defendant in the writ are amply secured. It would then be an unreasonable construction of the act to hold that a plaintiff in replevin should be deprived of the benefit of his process, when he could get two persons to share the responsibility, but could not procure one willing to do so. If a bond could be thus taken as matter of convenience to the plaintiff in replevin, an objection to its validity would *come* with a very bad grace from him, after he had, by virtue of it, obtained possession of the property mentioned in the writ. Nor ought the sureties to be permitted to object to an arrangement thus entered into by them to effectuate the very purpose to the fulfilment of which their consent was given. There is no suggestion, in the case stated, that the sheriff vexatiously and oppressively required two sureties when one responsible person was offered, and thus coerced the plaintiff into an abandonment of the process, or a compliance with the demand. In a case of oppression, where the bond was actually given, the plaintiff's responsibility under the bond would not be affected, while that of each surety would be less than if he stood as the only surety ; and even under such circumstances the bond would probably be held to be good, leaving the officer to his liability to the plaintiff in another way. Without then relying upon the narrow ground, that the letter of the law requiring one responsible person as surety is just as much complied with, when one responsible person is taken in conjunction with another, as when taken as the only surety, the bond being several as well as

joint, we are of opinion, upon the views already intimated, that this bond is valid.

Though no authority has been produced directly in point, yet several of the adjudged cases comprehend all the principles of our present decision. In the Bank of the Northern Liberties v. Cresson, 12 *S. & R.* 306, it was decided, that though the act of assembly establishing the bank and a by-law made under it, declared it to be the duty of the board of directors to take from the first book-keeper a bond with one or more sureties, yet that a bond executed by two persons as sureties, but not executed by the officer himself, was a good bond. Mr. Justice Duncan, in delivering the opinion of the court, says, (page 313,)—"I cannot see any thing in reason, in law, or in equity, to absolve these obligors from their bonds, or dissolve their contract. They have voluntarily entered into it; it was not prohibited by any law, or against any general policy. Courts cannot indulge their private feelings where loss has happened to a surety; for it would be idle to take security in any case, if hardship could be a reason for not giving it its full effect. Beyond the letter of the obligation it is not to be strained by any equity; but so far as they have bound themselves, courts cannot unbind them. For I understand the law to be this: if it was a bond which no law demanded, or, if demanded, it had not strictly conformed to the law; where a bond was given under no deception, under no mistake of the obligor, it is good as a bond at common law; and the inclination of my mind is, that where a statute gives a particular form, makes it the duty of the officers to take a bond in that form, and there is another form which is to produce the same effect, this changes not the obligation required, though it differ in circumstances, in sum, *in the number of sureties*, and the nature of the security, and there is no provision in the act declaring it to be void unless the prescribed form is pursued. It is a valid obligation at the common law."

A distinction which illustrates the doctrine, was taken in the case of Norton v. Simmes, *Hob. Rep.* 13, between a bond made void by statute and by common law. A bail bond taken by the sheriff varied in its form from the requisition of the statute of 23 *Hen. VI.* ch. 9—but the statute also expressly declared that "if any sheriff, &c. should take any obligation in other form, by colour of their office, it should be void; and it was ruled upon the

explicit language of the statute that the instrument was invalid. In Malever *v.* Redshaw, 1 *Mod.* 35, Mr. Justice *Twisden* remarked, that " he had heard his brother *Hobart* say, that because the statute would make sure work of it, and not leave to exposition what bonds should be taken, therefore it was added, that bonds taken in any other form should be void. For the statute is like a tyrant—when he comes he makes all void ; but the common law is like a nursing father—makes void only that part where the fault is, and preserves the rest."

In Sharp *v.* the United States, 4 *Watts* 21, it was held that where an act of congress made it the duty of a collector of the revenue to take a bond from the proprietor of stills with *two or more sureties*, a bond taken with *one surety* was good. In neither of the cases now cited, as decided in the Supreme Court of Pennsylvania, was the reasoning in favour of the validity of the bond as cogent as it is in the case before us. In the first, the sureties were held liable on the bond, when there was no responsibility on the same instrument of the principal party ; and in the other case, a full liability was imposed on one person, which the letter of the act of Congress directed should be borne by two or more.

In the United States *v.* Brown, *Gilpin's Rep.* 155, it was held that if a bond be taken at common law with a condition in part good and in part bad, a recovery may be had on it for a breach of the good part. The same doctrine is recognized in the United States *v.* Bradley, 10 *Peters* 360—and may be found laid down, as well established law, in Henry Pigott's case, 11 *Coke's Rep.* 276. In the case in Gilpin's reports, it was further ruled, that if a bond be taken under a statute, with a condition in part prescribed by the statute, and in part not prescribed by it, yet if it be easily divisible, a recovery may be had on it, for a breach of the part prescribed by the statute. Judge Hopkinson says, " nothing is required to be added to the contract and nothing to be taken from it, but what is favourable to the obligor, by diminishing the extent of his responsibility." Where then, as in the present instance, the contract remains the same, but the responsibility is diminished by a division not required by the letter of the statute, a conclusion in favour of the sufficiency of the bond, is quite as readily drawn and is as obviously required.

In *Morse v. Hodsdon*, 5 *Mass.* 314, the sheriff, to whom a writ of replevin had been directed, took from the plaintiff a bond with a condition differing in an important point from the bond required

[Saeltzer v. Ginther, Reed, and Smith.]

by the statute.   The condition should have been for a return of the goods, and for payment of damages and costs, whereas the condition actually declared a forfeiture of the penalty, if the plaintiff in replevin did not prosecute the suit to judgment and recover.   Chief Justice Parsons says, "the bond must be good, unless it be declared void by the common or statute law; we know of no law by which it is made void."

In *Clap v. Guild*, 8 *Mass.* 153, the sheriff was directed to execute a writ of replevin, if the plaintiff gave bond in 300 dollars. He took a bond in 800 dollars.   Though it was urged that the bond was not taken according to the command of the writ, nor pursuant to the directions of the statute, the instrument was held to be good.

If the act of assembly were a recent one, we should then hold the bond to be valid.   It is believed, however, that our present decision does but sanction an old and common practice in the sheriff's office.

Judgment for the plaintiff.